IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD P. GLUNK, MD | : | CIVIL ACTION |
| | : | |
| v. | : | NO.   23-3782 |
| | : | |
| THE UNITED STATES LIFE | : | |
| INSURANCE COMPANY IN THE | : | |
| CITY OF NEW YORK | : | |

# MEMORANDUM

**MURPHY, J.**                                                                                       **March 31, 2025**

      During his recovery from an accident, Dr. Richard P. Glunk decided to go to law school. He had long-term disability coverage from defendant US Life.  The policy included an occupational rehabilitation provision.  Believing that US Life would cover the costs of law school attendance, Dr. Glunk enrolled despite warnings from the company that it would not cover the expense.  And US Life did not pay for it.  So Dr. Glunk sued US Life, alleging that the denial was a breach of contract done in bad faith, and asserting that US Life and its representatives had assured him that the policy would cover his law school expenses.  Dr. Glunk proceeded pro se, although we note that during this litigation, he achieved his goal of graduating from law school, so he was more equipped than the usual pro se plaintiff to tackle his obligations to the court.

      Presently before us is US Life's motion for summary judgment, DI 48, Dr. Glunk's response, DI 53, and US Life's reply, DI 55.  US Life asserts that the policy contains no enforceable obligation to provide reimbursement, Dr. Glunk failed to receive approval for the same, and that it was objectively reasonable to deny Dr. Glunk's requests.  For the reasons set forth below, the motion is granted.

I.      **Background**

Dr. Glunk was insured under a long-term disability policy issued by the United State Life Insurance Company ("US Life") to the American Medical Association.  DI 48-2 at 12-30 (ECF); DI 48-1 ¶ 3; DI 53-1 ¶ 3.  The policy includes a "Rehabilitation Benefit," which allows for potential reimbursement of educational or vocational training expenses if approved in advance by US Life.  *See* DI 48-2 at 21 (ECF).  The Rehabilitation Benefit provides that:

> Benefits may be payable if you participate in a program of occupational rehabilitation.  If, during a period of Total Disability, you notify United States Life in writing that you want to participate in a program of occupational rehabilitation, United States Life will consider paying for certain expenses you incur.  United States Life's involvement will be determined by written agreement with you. Generally, United States Life may pay the reasonable costs of training and education which are not covered under health care insurance, workers' compensation, or any public fund or program.
>
> A program of occupational rehabilitation must be designed to help you return to work and be:
>
> 1.   a formal program of rehabilitation at an accredited graduate school;
> 2.   a recognized program operated by the federal or state government; or
> 3.   any other professionally planned rehabilitation program of training or education.

*Id.*; *see also* DI 53-1 ¶ 8.

Dr. Glunk argues in his responsive brief, without citation to any sworn documents or testimony, that in June 2017, Andrea Brown, a vocational specialist working on behalf of US Life, assured him that she "could get" US Life to cover his law school "tuition and some expenses" if he was admitted to a program.  DI 53-1 ¶¶ 33-36; *but see id.* ¶ 15 (recalling a series of events that contradicts this argument with citations to Ms. Brown's deposition and stating that "[t]he interview [with Ms. Brown] ended with an informal plan regarding Dr. Glunk meeting with law schools in the fall of 2017 and possibly applying during their application period that did

2

not begin until October 1 of 2017.  There was no plan."").  Ms. Brown, in her deposition, denies making such a representation.  *See* DI 48-2 at 107-108 (ECF) (Deposition of Ms. Brown at 44:25-45:10).

On June 16, 2021, Dr. Glunk spoke with Kristel Heard at US Life and told her that he had been accepted into law school and "that he had been told that if he was accepted into law school that the Rehabilitation Benefit would pay his tuition and some expenses."  DI 53-1 ¶ 19.  Dr. Glunk was informed at that time that US Life did not agree to pay for his law school.  *Id.* ¶¶ 19, 21; DI 48-1 ¶ 21.  Despite this, Dr. Glunk enrolled in law school and submitted a request to US Life for the payment of his law school tuition.  *See* DI 53-1 ¶ 22; DI 53-4 at 185-191 (ECF). Payment did not come.

Dr. Glunk initiated this action on July 11, 2022, in the Court of Common Pleas of Chester County, Pennsylvania, asserting claims for breach of contract and bad faith denial of benefits. US Life removed the case to this Court on September 27, 2023.  Discovery has ended and presently before us is US Life's motion for summary judgment, DI 48, Dr. Glunk's response DI 53, and US Life's reply DI 55.

US Life argues that no enforceable promise to pay tuition was made, and even if such a statement had been made, it was not legally binding under the policy terms.  DI 48-3 ¶¶ 7-15. US Life also argues that Dr. Glunk has not provided evidence to support a jury finding that US Life acted unreasonably, or "that it knew or recklessly disregarded its lack of reasonable basis in denying [his] claim."  *Id.* ¶¶ 16-22 (quoting *Bostick v. ITT Hartford Grp.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999)).

Dr. Glunk opposes summary judgment, contending that: US Life breached the contract by

failing to honor the Rehabilitation Benefit as represented to him; Ms. Brown assured him that US Life would cover his law school tuition; and US Life acted in bad faith by misrepresenting the policy terms and arbitrarily denying his claim. *See* DI 53-2 ¶¶ 15-56.

Because Dr. Glunk did not adduce sufficient evidentiary support for his claims, we grant US Life's summary judgment motion in its entirety.

## II.     Legal standard and analysis

Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is material if it could affect the outcome of the case under governing law, and it is genuine if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, we must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Doe v. CARS Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008). However, the non-moving party cannot rely on mere allegations but must present evidence creating a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The party opposing summary judgment, whether pro se or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial." *Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (quoting *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009)).

**A. Breach of contract**

Under Pennsylvania law,[1] "[t]o prevail on a breach of contract claim, a party must prove: (1) the existence of a contract, including its essential terms, (2) a breach of the contract, and (3) resultant damages." *Aspira, Inc. v. Sch. Dist. of Phila.*, No. 19-4415, 2021 WL 3511294, at *12 (E.D. Pa. Aug. 10, 2021) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)).

Dr. Glunk argues that US Life breached contractual obligations in the Rehabilitation Benefit. He contends that because "may," "will consider," "certain expenses," and "written agreement" are not defined explicitly, the Rehabilitation Benefit is ambiguous, and, because ambiguous language is construed against the drafter, US Life was required to pay for his law school and therefore breached the contract by failing to do so. DI 53-2 ¶¶ 19-24 (citing *Am. Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, 644 F. Supp. 2d 624 (W.D. Pa. 2008), *aff'd in part, rev'd in part and remanded sub nom.*, 584 F.3d 575 (3d Cir. 2009)).

We disagree as a matter of law. The contract language in the Rehabilitation Benefit is not ambiguous merely because words are not explicitly defined and, regardless, the terms identified by Dr. Glunk do not give rise to an inviolable obligation to pay for Dr. Glunk's law school. The Rehabilitation Benefit provides a mechanism for an insured, like Dr. Glunk, to enroll in a prospective program of occupational rehabilitation to be defined by the insured and US Life. *See Aspira*, 2021 WL 3511294, at *14 (finding that proposals for future contracts to assist failing schools did not create contracts because the policy governing the proposals did not

---

[1] Both parties make their arguments under Pennsylvania law. Neither party has identified another relevant state interest. We will therefore apply Pennsylvania law.

5

require the school district to issue a contract (quoting *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 666 (3d Cir. 1998))); DI 48-2 at 21 (ECF).  The policy does not oblige US Life to pay for Dr. Glunk's law school education or provide any occupational rehabilitation at all, and nothing that Dr. Glunk identifies as ambiguous changes that.  Thus, even taking Dr. Glunk's factual assertions as true, he cannot succeed on his claim of breach of contract.

Dr. Glunk also argues in his briefs that Ms. Brown's alleged statements to him during the June 2017 meeting constituted a promise by US Life to pay for his law school tuition and expenses.  DI 53-1 ¶¶ 33-35; DI 53-2 ¶ 55.  However, even assuming Ms. Brown had the authority to modify the contract, Dr. Glunk offers no evidence that she made any statement binding US Life to cover Dr. Glunk's law school tuition and expenses.

Dr. Glunk argues, again solely through his briefs and not relying on his own sworn testimony, that "Andrea Brown represented to Dr. Glunk that she was the person that could get the Rehabilitation Benefit to pay for tuition and some expenses if Dr. Glunk was accepted to law school during Dr. Glunk's conversations with her in 2017."  *See* DI 53-1 ¶¶ 33-35; DI 53-2 ¶ 55.[2]  He identifies no supporting corroborative or contextual evidence.  To be sure, Dr. Glunk verified his complaint and may rely on it to defeat summary judgment insofar as the allegations are based on personal knowledge.  *Boomer v. Lewis*, No. 06-0850, 2009 WL 2900778, at *14 (M.D. Pa. Sept. 9, 2009), *aff'd*, 541 F. App'x 186 (3d Cir. 2013).  The verified complaint states that he was "assured that he would receive the Rehabilitation Benefit if he was accepted to law school."  *See* DI 1-1 ¶¶ 14, 34.  However, the complaint attributes this statement to "Crystal," not

---

[2] Dr. Glunk also appears to directly contradict this statement multiple times in his briefing.  *See* DI 53-1 ¶¶ 15, 16, 32 ("There was no formal plan in 2017.").

Ms. Brown, and no evidence connects Crystal's statement to an individual with the authority to bind US Life. *Id.* at ¶¶ 12-14 (presumably "Crystal" and "Kristel Heard" are the same person, but it does not matter either way for these purposes). Without evidence, Dr. Glunk's assertions in his briefs are insufficient to create a genuine issue of material fact.[3] Ms. Brown testified in her deposition that she never assured Dr. Glunk that US Life would cover his law school tuition. *See* DI 48-2 at 107-108 (ECF) ("Q. Did you ever make any representations to Dr. Glunk about his eligibility for any benefits under his disability policy? A. No."). Dr. Glunk has not produced any deposition testimony, affidavit, or other admissible evidence contradicting or calling into

---

[3] Although we denied Dr. Glunk's motion to amend his complaint based on futility and prejudice, we note that the allegations in Dr. Glunk's proposed amended complaint would not save his claims. *See* DI 38-2. The proposed amended complaint is not verified, and the allegations cannot support a finding that Ms. Brown bound US Life to an obligation to pay for Dr. Glunk's law school. Rather, they support the opposite conclusion.

The proposed amended complaint states: "David Pritchard, the rehabilitation case manager working for Hartford, called Dr. Glunk. . . . David Pritchard stated that after an insured makes a request under the Rehabilitation Benefit that the case manager must submit a request to the team leader for vendor services. . . . David Pritchard recommended a referral to Andrea Brown, a local vendor that US Life had used for approximately twenty-two years. . . . Andrea Brown knew that the Hartford ability analyst would execute the release of the Rehabilitation Benefit based on her recommendation. . . . Andrea Brown told Dr. Glunk that if he was accepted to law school or Wharton that she would be able to get his tuition and some expenses paid because of her status with the insurance company. . . . Andrea Brown and Dr. Glunk did not establish a 'plan' . . . Andrea Brown did not send anything to Dr. Glunk in writing regarding the agreement." *Id.* ¶¶ 95-96, 100-01. Although Ms. Brown may have indicated that US Life would rubber-stamp her recommendation due to her reputation, there is no support for the allegation that US Life made such an assertion. *See Farris v. J.C. Penney Co.*, 176 F.3d 706, 711-12 (3d Cir. 1999) ("[T]he 'crucial question in ascertaining whether apparent authority has been created is whether the *principal* has made representations concerning the agent's authority to the third party.'" (quoting *Edwards v. Born*, Inc., 792 F.2d 387, 390 (3d Cir. 1986))). In fact, these allegations demonstrate that Ms. Brown did not possess apparent authority to bind US Life because she was required to submit a recommendation that US Life would then consider. Furthermore, Dr. Glunk repeatedly asserts that he and Ms. Brown never agreed to specific terms or in writing.

7

question Ms. Brown's testimony.

We also find significant the policy's explicit statement that any rehabilitation benefits provided by US Life "will be determined by written agreement." *See* DI 48-2 at 21 (ECF). Dr. Glunk points to his written request that US Life pay for his tuition and transcriptions of calls where he asked the same. *See* DI 53-1 ¶ 26. However, he does not dispute that there is no written agreement that between him and US Life on this point.

On the record adduced by Dr. Glunk, no reasonable juror could conclude that either US Life or someone acting with apparent authority on behalf of US Life made a binding promise to Dr. Glunk to pay for his law school. Therefore, we grant summary judgment on the breach of contract claim.

### B. Bad faith claim

Under 42 Pa. C.S.A. § 8371, a bad faith claim requires clear and convincing evidence that the insurer denied benefits without a reasonable basis and knew or recklessly disregarded its lack of a reasonable basis when it denied the benefits. *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 376-77 (Pa. 2017) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *Serino v. Prudential Ins. Co.*, 706 F. Supp. 2d 584, 592 (M.D. Pa. 2009). Because Dr. Glunk must prove bad faith with clear and convincing evidence, his "burden in opposing a summary judgment motion is commensurately high." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004). US Life need only provide "[a] reasonable basis . . . to defeat a claim of bad faith." *Id.*

US Life argues that it had a reasonable basis to deny Dr. Glunk's claim because he failed to ask for a program in writing and to obtain written approval for any occupational rehabilitation

8

program, as explicitly required by the policy for Rehabilitation Benefits. *See* DI 48-3 ¶ 18 ("If, during a period of Total Disability, *you notify United States Life in writing* that you want to participate in a program of occupational rehabilitation, United States Life will consider paying for certain expenses you incur. *United States Life's involvement will be determined by written agreement with you*." (emphasis added)); DI 48-1 ¶¶ 11-26. The policy states that occupational rehabilitation programs must be approved in writing, yet Dr. Glunk never obtained such approval. *See* DI 48-2 at 21 (ECF). US Life contends that this alone was a sufficient reason for denial. *See* DI 48-3 ¶¶ 21-22. Additionally, US Life maintains that even if Dr. Glunk's requests for tuition payments in 2021 and 2022 were considered written requests for an occupational rehabilitation program, it was reasonable for US Life to deny those programs because his law school extended beyond the policy's expiration date, making it ineligible for coverage. *See* DI 48-1 ¶¶ 11-26.

Dr. Glunk has not identified evidence indicating that US Life lacked a reasonable basis for denying his claim. Much of Dr. Glunk's argument focuses on the alleged lack of definitive policy guidelines for structuring an occupational rehabilitation program for insured individuals, as well as the ongoing communication challenges between himself and the various representatives managing his claim. *See* DI 53-1 ¶¶ 11-39; DI 53-2 ¶¶ 25-32. But this argument does not grapple with the undisputed facts in the record that support US Life's position and thus does not dispel US Life's proffered reasonable basis for denying his claim.

The undisputed record on US Life's handling of Dr. Glunk's Rehabilitation Benefit request demonstrates a reasonable application of the policy's requirements. The record reflects that US Life engaged with Dr. Glunk to assist him with rehabilitation services. After he first

9

expressed interest in returning to work in April 2017, US Life referred him to a third-party vocational specialist, Ms. Brown, who conducted an assessment and worked with him to explore potential career paths, including law school. *See* DI 48-2 at 42, 46-48 (ECF). Ms. Brown sent a follow-up e-mail on September 6, 2017, but Dr. Glunk did not respond. *See Id.* at 50; DI 53-1 ¶ 16. Dr. Glunk admits that the delay was at least in part due to his recuperation from a car accident in August 2017. *See* DI 53-2 ¶ 4. Dr. Glunk called US Life on October 24, 2017, and spoke with a representative, stating that he was "working with [Ms. Brown] on going to school," but he did not provide any additional information and did not have any questions. DI 53-4 at 184 (ECF); *see* DI 53-1 ¶ 17. The claim manager, Ms. Heard, called Ms. Brown the next day and Ms. Brown explained to her that the file was closed because Dr. Glunk never followed up about researching schools. DI 53-4 at 183-84 (ECF). A closure report was later sent to Ms. Heard indicating the same. *Id.* at 183 (ECF). Neither side reached out to update each other. *Id.* Ms. Heard closed her file on Dr. Glunk's rehabilitation case in November 2017. *Id.*

In September 2019, Dr. Glunk reinitiated contact with US Life and again expressed an interest in returning to school. DI 48-2 at 53 (ECF); DI 53-1 ¶ 18; *see also* DI 53-4 at 181 (ECF) (indicating that a claim manager attempted to reach out to Dr. Glunk in 2019 but found he was unresponsive). In May 2021, Dr. Glunk reached out to US Life again and explained that he had applied to law school. DI 53-4 at 181-82 (ECF). The claim records indicate that Ms. Heard reviewed the request and Dr. Glunk's claim file and determined that a law school program was too long and costly to be approved. *See id.* at 180-81 (ECF). In June 2021, Ms. Heard and Dr. Glunk finally spoke by telephone. Dr. Glunk told Ms. Heard that he had been accepted to law school and planned to enroll. *Id.* at 178. Ms. Heard informed him about her earlier assessment

10

and said that US Life would not cover his law school because of the cost and length of the program. *Id.* Later that month, US Life again informed Dr. Glunk that it would not cover his law school and advised him that there were "no records of being tol[d] yes for law school." *Id.* at 177. Dr. Glunk submitted a written claim for reimbursement in a letter on July 12, 2022, the day his policy coverage ended. *Id.* at 190-191; *see also* DI 53-2 ¶ 9 (explaining that Dr. Glunk submitted the request in writing after reviewing the requirements of the policy in 2022). US Life sent a return letter on December 23, 2022, explaining that US Life told Dr. Glunk in June 2021 that they "would not cover the cost of your tuition reimbursement due to your station in life and the cost and length of the program," and explained the appeal process to him. DI 48-2 at 63-64 (ECF).

Considering the totality of the undisputed events, especially Dr. Glunk's extended period of inactivity regarding his rehabilitation benefits, his failure to follow through with the vocational plan initiated in 2017, and his failure to submit a written request for an occupational rehabilitation program until the last day of his policy, we conclude that US Life's denial of his claim was objectively reasonable. US Life's denial of Dr. Glunk's request for tuition reimbursement in 2021 and 2022 was reasonable also because his law school program extended beyond the lifetime of the insurance policy. The policy was set to terminate on July 12, 2022, yet Dr. Glunk sought reimbursement for a multi-year educational program that would continue well beyond that date. When US Life formally denied his request in December 2022, and again upon appeal in February 2023, it specifically cited the fact that his requested tuition reimbursement would extend beyond the policy's expiration. Dr. Glunk responds by arguing that "[t]he policy does not state that the program must be completed before the termination of the

11

policy," DI 53-1 ¶ 38, but the lack of a specific policy does not undermine the reasonableness of US Life's basis for denial. Dr. Glunk does not explain why it was unreasonable for US life to decline to pay for a program that would extend beyond the lifetime of the policy.

Because the undisputed record demonstrated clearly that US Life's refusal to pay for Dr. Glunk's law school was objectively reasonable, because there is no direct evidence of bad faith conduct, and because of the high standard of proof for bad faith claims, we grant summary judgment in favor of US life on the bad faith claim as well.

### III.   Conclusion

For the reasons stated above, we grant summary judgment in favor of US Life on both of Dr. Glunk's claims.